### In re ANDERSON.

### Petitions of TODD–MELLOR CO.

#### (District Court, D. Rhode Island. July 27, 1918.)

#### No. 1573.

1. BANKRUPTCY ⊛⟶184(2)—PREFERENTIAL TRANSFER—RECORD—"REQUIRED."

    Under Bankruptcy Act July 1, 1898, §§ 60a, 60b (Comp. St. 1916, § 9644), avoiding preferential transfers by an insolvent recorded within four months before bankruptcy proceedings, "if by law such recording * * * is required," the word "required" does not mean required for any purpose, and, in view of Gen. Laws R. I. 1909, c. 253, § 2, making an unrecorded mortgage as between the parties valid the mere failure to record is insufficient evidence of a tacit agreement between the bankrupt and the mortgagee to withhold it from record for improper purposes.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Require.]

2. MORTGAGES ⊛⟶25(6)—CONSIDERATION—PRESUMPTION.

    The presumption is that a mortgage is for a present consideration.

3. BANKRUPTCY ⊛⟶342½—EVIDENCE—RECORD.

    On petitions to review referee's order disallowing a mortgagee's claims for payment out of proceeds of mortgaged realty sold free and clear of liens, testimony of bankrupt before referee, not properly a part of the record on the petitions, might be disregarded.

4. BANKRUPTCY ⊛⟶340—PREFERENCE—NOTICE TO CREDITOR—EVIDENCE.

    On petitions to review referee's order disallowing claims for payment out of the proceeds of mortgaged realty sold free and clear of liens, evidence *held* to sustain referee's conclusion that the creditor, immediately receiving the proceeds of the mortgage, had reasonable cause to believe that a preference was intended.

5. BANKRUPTCY ⊛⟶342½—LOAN TO BANKRUPT—INTENT—EVIDENCE.

    On petitions to review referee's order disallowing claims for payment out of the proceeds of mortgaged realty, sold free and clear of liens, evidence *held* to support referee's finding that the loan was sought and made to procure funds to prefer a creditor, and to pay its claim in full.

6. BANKRUPTCY ⊛⟶342½—HEARING BEFORE REFEREE—WEIGHT OF EVIDENCE.

    The credit which should be attached to oral testimony of witnesses appearing before the referee, and the weight which he should attach to sweeping denials of actual knowledge of matters concerning which knowledge or inquiry were to be expected, are matters to be finally determined by him.

In Bankruptcy. In the matter of Alma C. Anderson, bankrupt. Two petitions by the Todd-Mellor Company to review orders of the

referee. On petition No. 1, order reversed, and petitioner's claim allowed; and on petition No. 2, order affirmed.

Crane, Munro & Barry, of Providence, R. I., for petitioners.

BROWN, District Judge. These petitions seek to review the orders of the referee disallowing claims for payment out of the proceeds of real estate subject to mortgage; the real estate having been sold free and clear of liens.

The first question is as to the validity of the claim based upon a mortgage to Albert J. Eastwood, dated November 15, 1912, and recorded February 10, 1916.

The petition in bankruptcy was filed March 13, 1916, and adjudicated March 27, 1916.

The transfer of the mortgage by Eastwood to Todd-Mellor Company, the petitioner, is dated March 6, 1916, and was recorded March 11, 1916, two days before the filing of the petition in bankruptcy.

The evidence reported is insufficient to show any ground for impeaching the Eastwood mortgage, except the fact that it was withheld from record. There is a failure of proof to show that it was not given for full consideration, or that the bankrupt was then insolvent.

[1, 2] Under chapter 253, § 2, of the General Laws of Rhode Island, a mortgage as between parties, though unrecorded, is valid. In applying sections 60a and 60b of the Bankruptcy Law (Act July 1, 1898, c. 541, 30 Stat. 562 [Comp. St. 1916, § 9644]), the referee seems to have followed those cases which interpret the clause contained in section 60a, "if by law such recording or registering is required," to mean required for any purpose. This is contrary to the decision in Carey v. Donoghue, 240 U. S. 430, 437, 36 Sup. Ct. 386, 60 L. Ed. 726, L. R. A. 1917A, 295. The presumption is that the mortgage was for a present consideration, and unless the failure to record it can be regarded as sufficient evidence of a tacit agreement to withhold it from record for improper purposes, thereby making it in effect a fraudulent transaction, there seems to be no ground for holding it invalid, since it was recorded February 10, 1916. Bailey v. Baker Ice Machine Co., 239 U. S. 268, 276, 36 Sup. Ct. 50, 60 L. Ed. 275; Remington on Bankruptcy, § 1270$^{3}/_{10}$.

I am of the opinion that the mere fact of failure to record is insufficient, in the absence of other circumstances, to show fraud, in which the bankrupt and the mortgagee, Eastwood, participated, and that in the hands of Eastwood the mortgage, so far as appears, was valid.

It follows that the Todd-Mellor Company could rightfully purchase it, that the transfer to the Todd-Mellor Company of this mortgage was not prejudicial to creditors, and that under the transfer from Eastwood it is entitled to claim rights as a third mortgagee in the funds remaining after the satisfaction of the prior mortgages.

[3-5] The second question is as to the validity of the $1,600 mortgage to the Todd-Mellor Company.

This mortgage was executed February 15, 1916, and was to secure payment of a note for $1,600. After deducting interest and a 10 per

cent. commission, the proceeds received from the $1,600 mortgage amounted to $1,392. This money was immediately applied to the payment of notes held by the Italo-American Mutual Trust Company, together with a small additional amount. The effect of this was to prefer that company and to pay it in full.

The question is whether, upon the evidence, the referee was justified in applying Dean v. Davis, 242 U. S. 438, 37 Sup. Ct. 130, 61 L. Ed. 419, which holds that, where an advance is made to enable the debtor to make a preferential payment, the transaction presents an element upon which fraud may be predicated. As was said in that case:

"It is a question of fact in each case what the intent was with which the loan was sought and made."

The evidence seems sufficient to support the referee's finding that the loan was sought for the purpose of procuring funds to pay the Italo-American Company, and the purpose to which it was immediately applied is in itself evidence of the intent with which it was sought. There is some confusion in the record, and the petitioner objects to the consideration by the referee of testimony given by the bankrupt before him. As it does not appear that this is properly a part of the record upon these petitions, this objection seems well taken, and this evidence may be disregarded.

In the record proper appears, however, the testimony of Albert S. Eastwood, a creditor (not the mortgagee under the earlier mortgage), which was given at the hearing at which the petitioner was represented by counsel. From his testimony it appears that in a conversation with Bassett, treasurer of the bank, the witness stated that "he thought the Andersons were in a pretty bad way," and talked with the treasurer as to whether "we could get out some way together." This was but a short time before the Todd-Mellor loan to Anderson and the payment to the bank.

I find no error in the referee's conclusion that the bank had reasonable cause to believe that a preference was intended. That the efforts to secure a loan followed so shortly after this conversation, together with the fact of the immediate application of the proceeds, is in itself sufficient to warrant an inference that pressure was exerted by the bank to secure payment.

Upon the question of the intent with which the loan was made the evidence is circumstantial. The property offered as security for the loan was already heavily incumbered, beyond the ordinary margin of security, and the new loan sought was for an amount which practically covered, if it did not exceed, any possible equity in the real estate. A commission of 10 per cent. was charged, in addition to interest, and Mr. Todd, the president of the Todd-Mellor Company, testified, explaining this commission: "It was a chance, and we were getting well paid for it." In reply to the question: "Q. Greater chance than you usually take?" he said: "In the ordinary course of business, but we do take them from time to time."

Under all the circumstances, and in view of the prior unrecorded mortgage, the referee was entitled to find that the mortgage was not

taken in the ordinary course of business, but for some exceptional reason.

That a mortgage of this character was taken upon such doubtful security, without inquiry as to the personal responsibility of the maker of the note, and as to whether the proceeds of the note were to be applied to the reduction of the borrower's other indebtedness, thus increasing the personal responsibility of the borrower, seems improbable.

Mr. Todd was a director and the secretary of the Italo-American bank, and his attorney, Mr. Ball, who examined the title, was also a director. It is improbable that the mortgagor sought a loan from a director of the bank with any intent of concealing the obligations to the bank; and it seems much more probable that the intent to apply the proceeds of the mortgage to the payment of the bank was stated as an inducement to secure the loan than that it was not stated, or that it was concealed from Mr. Todd. The unusual character of the security offered would naturally have led a business man of sagacity to make full inquiries, and the omission of the natural inquiry is hardly explainable, except upon the theory that the lender preferred not to be informed or to receive any notice which might affect the validity of his security.

What is in fact done by concurrent acts tends in itself to prove what was prearranged. The bank, after notice putting it on guard, secured its preference; the bankrupt borrowed the money applied to making this preference from a director and secretary of the bank, after the examination of the title by another director of the bank.

[6] The credit which should be attached to oral testimony of witnesses appearing before him, and the weight which he should attach to sweeping denials of actual knowledge of matters concerning which knowledge or inquiry were to be expected, were matters to be finally determined by the referee. Upon a careful reading and examination of the testimony of Mr. Todd, I agree with the referee's finding that there are improbabilities in Mr. Todd's testimony. The referee heard this testimony, and I am unable to say that he erred in refusing to give credit to repeated denials of knowledge usually required in the course of dealings between mortgagor and mortgagee where the security is doubtful.

In the absence of any credible explanation from the lender, the natural inference may be drawn from the circumstances.

The case in its general aspects is not unusual. In cases of preference, all knowledge of any intent to prefer or to assist in bringing about a preference is usually denied. The chief reliance must be upon circumstantial evidence, interpreted in the light of experience as to the ordinary methods adopted by creditors, who seek a larger share of a bankrupt's assets than can be secured under a system of administration which calls for equality.

Upon a careful consideration of the very thorough briefs of counsel for the petitioner, I am of the opinion that the following orders should be made:

In petition No. 1, relating to the proceeds of the Eastwood mortgage, the order of the referee is reversed, and the claim of the Todd-

Mellor Company for the amount of principal still due on the Eastwood mortgage, with interest to July 11, 1916, amounting to $1,126.42, is allowed, subject to correction upon entry of decree of computations, and to deduction for the actual proportional expense of sale, but without deduction of any of the general expenses of the bankruptcy proceedings.

In petition No. 2, as to the mortgage to the Todd-Mellor Company, the order of the referee is approved and affirmed.

Draft decrees may be presented accordingly.

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes