**In re SANDLER et al.**

**No. 8480.**

District Court, D. Maryland.

March 16, 1939.

Louis J. Sagner and Leon H. A. Pierson, both of Baltimore, Md., for petitioners.

Morton H. Rosen, of Baltimore, Md., for bankrupts.

CHESNUT, District Judge.

The question presently presented in the above bankruptcy case is whether the bankrupts are entitled to receive their discharge. One of their creditors has filed objections thereto, the only one pressed, however, being based on section 14b (4) of the Bankruptcy Act, as amended by Act May 27, 1926, § 6, 44 Stat. 663, 11 U.S.C.A. § 32(b) (4). This section provides that—

"The judge shall hear the application for a discharge and such proofs and pleas as may be made in opposition thereto by the trustee or other parties in interest, at such time as will give the trustee or parties in interest a reasonable opportunity to be fully heard; and investigate the merits of the application and discharge the applicant, unless he has * * * (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition, transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed any of his property, with intent to hinder, delay, or defraud his creditors ;".

The applicable facts developed at the hearing may be shortly stated. The bankrupts from 1920 to 1935 conducted in Baltimore City the business of manufacturing, selling and distributing pretzels from their principal place of business 2020 Harford Avenue. In November 1935 they entered into an agreement with the Delaware Pretzel Company, the principal business of which was in the State of Delaware, by which the Sandlers leased for the period of a year, all of their business assets to the Delaware Pretzel Company in consideration of the agreement of the latter to employ the two Sandlers at a salary of fifty dollars ($50) a week each in continuation of the business. There was no other consideration for the lease. The business assets of the Sandlers at that time consisted of—

1. The real property used in the business, subject to mortgage which was at about the same time foreclosed without resulting equity to the bankrupts;

2. Five or six automobile delivery trucks, all subject to chattel mortgage which was subsequently foreclosed without resulting equity;

3. Certain machinery and fixtures previously used in the manufacture of pretzels, but the use of which was discontinued when the lease was made, and subsequently abandoned by the trustee in bankruptcy as of no value;

4. A trade mark consisting of the phrase "R-Good" used in the pretzel business and

5. Whatever good will, if any, there was in a trade list of customers of about 1800 names.

After the lease was made the business was continued for the account of the Delaware Pretzel Company which assumed and paid all current expenses, manufactured pretzels in Delaware and had them distributed in Baltimore under the supervisory activity of one of the Sandlers, the

other Sandler being employed in Delaware.

In March 1936 the creditors filed an involuntary petition against the bankrupts which was followed by an adjudication but apparently the trustee when elected found no assets of any substantial value and did not take any action to set aside the lease. The Delaware Pretzel Company continued to use the trade-mark "R-Good" which it is said is now being used by a former employe without consideration. The Delaware Pretzel Company discontinued its own business in or about October 1936.

■ The creditor objecting to the discharge contends that the lease to the Delaware Pretzel Company under the circumstances constituted a transfer of the bankrupts' property with intent to hinder, delay or defraud creditors within the meaning of the statute. By the clear weight of authority, any creditor objecting to a discharge on this ground must show that the transfer was made with *actual,* as distinguished from mere *constructive,* intent to defraud. Gilbert's Collier on Bankruptcy, 4th Ed. §§ 494, 495; 8 C.J. p. 1440; Feder v. Goetz, 2 Cir., 264 F. 619; In re Julius Bros., 2 Cir., 217 F. 3, L.R.A.1915 C, 89; In re Rice & Reuben, D.C.Me., 43 F.2d 378; In re Braus, 2 Cir., 248 F. 55; In re Feynman, 2 Cir., 77 F.2d 320; In re Nicolet, D.C.Md., 10 F.Supp. 541. The language of the section "with intent to hinder, delay, or defraud his creditors" is, of course, very similar to that appearing in the statute of 13 Elizabeth with regard to fraudulent conveyances; and similar phraseology appears in other sections of the Bankruptcy Act with respect to what constitutes an act of bankruptcy, section 3a (1), 11 U.S.C.A. § 21(a) (1); and in section 67e, 11 U.S.C.A. § 107(e), with respect to voidable liens. Under the statute of Elizabeth a conveyance by an insolvent debtor of his property without consideration was constructively fraudulent as a matter of law, Whedbee v. Stewart, 40 Md. 414, and it was not essential to prove actual fraud. And the phrase as used in the Bankruptcy Act, § 3a (1) is of a similar legal import, Gilbert's Collier on Bankruptcy, 4th Ed. p. 86; as to the necessity of proving actual fraud under section 67e, see Gilbert's Collier on Bankruptcy, 4th Ed. pp. 1108, 1109; Dean v. Davis, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed.

419. In Feder v. Goetz, supra, the court said:

"The words appear again, as we have seen, in section 14b, subd. 4, in connection with the matter of discharge. They also appear in section 67e (section 9651 [11 U. S.C.A. § 107]) in still another connection. But it does not follow that words used in one section of an act always mean the same thing when used in some other section of the act and in a different connection. * * * *

"There is no rule of construction which prevents us from holding that the word 'intent' in the expression 'with intent to hinder, delay or defraud creditors' means actual intent in the fourteenth section, even though it were well established that constructive intent is sufficient in the third section." [264 F. 624.]

■ The question in this case therefore is whether the circumstances related show an actual intent on the part of the bankrupts to defraud their creditors. In this respect the particular case on its facts is a rather unusual one, and the proper answer to the question is not free from doubt. It has resulted that the creditors have realized nothing of value from the bankrupts' business assets; but on the other hand there is no affirmative proof in the case that the assets when leased to the Delaware Pretzel Company were of any substantial value. The only consideration paid by the Pretzel Company was the agreement to hire each of the bankrupts at $50 a week. They rendered personal services under this employment and presumably earned their salaries which were doubtless consumed in living expenses. It is conceivable that if the creditors had taken prompt action the business as a going entity, especially in view of the extensive trade list of customers, might have been disposed of for some monetary value; but there is no positive proof as to that. The lease agreement was drawn for the bankrupts by reputable counsel and there is no evidence to indicate that he was conscious of any improper or unethical action in the matter. Probably the bankrupts were more intent on securing remunerative employment for themselves than thoughtful of their creditors; but there is no direct proof of their actual fraudulent intent as to their creditors. The question is whether it ought to be inferred as a fact from the circumstances.

After careful consideration and with recognition of the somewhat doubtful character of the transaction, I conclude that the circumstances are not sufficiently strong to justify the inference of actual fraud. It has been held in some cases that the transfer of assets of trifling or no real value, or where there is no equity in the property for the bankrupt, is not sufficient ground for withholding a discharge. In re Rice & Reuben, supra; Devorkin v. Security Bank & Trust Company, 6 Cir., 243 F. 171. In a case of real doubt as to the facts it seems more in accordance with the modern attitude of the courts toward the discharge of debtors to grant the discharge in this case. Lockhart v. Edel, 4 Cir., 23 F.2d 912; Johnston v. Johnston, 4 Cir., 63 F.2d 24, 26.

The objections to the discharge will therefore be dismissed and the discharge granted. Counsel should present the appropriate order in due course.