In re SOUTHERN TECHNICAL COLLEGE, INC.

SOUTHERN TECHNICAL COLLEGE, Plaintiff,

v.

GRAHAM PROPERTIES PARTNERSHIP, Defendant.

Bankruptcy No. 92–41095S.
Adversary No. 94–4092.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

March 16, 1995.

Order Altering Judgment April 13, 1995.

Charles R. Camp, Little Rock, AR, for Plaintiff.

Charles W. Baker, Little Rock, AR, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

This Cause came before the Court upon the trial of the Complaint to Recover Money or Property held on February 2, 1995. The debtor seeks recovery of $16,900.67 in past-

due rental payments made during the ninety days prior to the filing of the petition in bankruptcy pursuant to section 547 of the Bankruptcy Code. The defendant asserts that the new value exception prohibits the debtor from recovering the transfer. 11 U.S.C. § 547(c)(4).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(F).

The parties stipulated that the debtor leased property from the defendant Graham Property Partnership ("Graham") in Monroe, Louisiana, beginning in August 1987. The monthly lease payments were $16,900.67 after April 1989, a fair and reasonable value. The debtor typically made the lease payments during the first week of the month. The debtor paid the rent in this manner through December 1991. In early 1992, however, the debtor's financial difficulties became apparent: the January 1992 check was not received until January 17, 1992. The disputed February 1992 check, in the amount of $16,900.67, was dated February 28, 1992, and received by Graham on March 2, 1992. No other remittances were made to Graham until after the bankruptcy case was filed. Graham holds an $11,846 security deposit, described in the lease as a "security interest to secure payment of rents and damages."

▪ The issues for the Court are whether the payment represented by the February 1992 check constitutes an antecedent debt, and, if so, whether that transfer falls within any of the exceptions to the authority of the debtor to avoid the transfer as a preference. Specifically, Graham asserts that the new value exception of sections 547(c)(1), (4) preclude recovery by the debtor.[1] Section 547(c) provides in pertinent part:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(1), (4). Thus, to the extent that a creditor extends contemporaneous or subsequent unsecured new value that remains unpaid, the trustee or debtor-in-possession may not avoid the transfer. *Charisma Investment Co. v. Airport Systems, Inc.* (*In re Jet Florida System*), 841 F.2d 1082 (11th Cir.1988).

▪ The parties stipulated that all of the elements of section 547(b) to avoid the transfer were met except for the requirement that the payment be on account of an antecedent debt. Graham argues that, since the payment was received when the March rent was due, the payment was on account of the March rent such that it was not an antecedent debt. The uncontroverted evidence, however, is that the payment was on account of the February rent. The principal of the debtor testified that the payment was meant for the February rent, and, also that usual business practice would be to credit the earlier, unpaid, rent. Accordingly, as a factual matter, the check in issue was in payment of the February rent.

▪ It is undisputed that the February rent was due on February 1. "[A] debt is

---

1. In its pleadings, Graham also asserted that the transfer fell within section 547(c)(2) as a payment made in the ordinary course of business. Since the payment was substantially later than the ordinary course of dealing between the parties, *see generally Jones v. United Savings and Loan Assoc.* (*In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.*), 9 F.3d 680 (8th Cir.1993), it is not surprising that this issue was not argued at trial.

incurred on the date upon which the debtor first becomes legally bound to pay." *Iowa Premium Serv. Co. v. First National Bank (In re Iowa Premium Service Co.),* 695 F.2d 1109, 1111 (8th Cir.1982). In this instance, the debtor's obligation to pay the rental payments were incurred as each payment became due, on the first of each month. *See id.; In re Garland,* 28 B.R. 87 (Bankr. E.D.Mo.1983). An antecedent debt is a debt that is incurred prior to the relevant transfer. Since the February rent was due on February 1, but not paid until March 2, that transfer was on account of an antecedent debt. Accordingly, the parties having stipulated to the remainder of the elements of section 547(b), the transfer made on March 2, was preferential.

■ Graham argues that the payment constituted new value. The Court agrees that the payment was for "new value"[2] as that term is used in both sections 547(c)(1) and (c)(4). Graham did not merely forbear from asserting its rights under the lease, but rather provided a service to the debtor in the form of leased space. While it is true that mere forbearance is not considered new value, *see e.g., Bavely v. Merchants National Bank (In re Lario),* 36 B.R. 582 (Bankr. S.D.Ohio 1983), the debtor received the use of the property. That use is value, and, to the extent the debtor remained in the property for the next month(s), that use was new value. Although the cases are few, the majority of the Courts that have examined this factual situation agree that use of property will constitute new value, despite the fact that the lease may have been entered into years prior. *See, e.g., Charisma Investment Co. v. Airport Systems, Inc. (In re Jet Florida System),* 841 F.2d 1082, 1084 (11th Cir. 1988) ("Charisma's forbearance might have constituted new value had Air Florida actually stayed and used the leased property …"); *In re Everlock,* 171 B.R. 251 (Bankr. E.D.Mich.1994); *In re American International Airways,* 68 B.R. 326 (Bankr.E.D.Pa. 1986); *In re Quality Plastics,* 41 B.R. 241 (Bankr.W.D.Mich.1984); *In re Garland,* 28 B.R. 87 (Bankr.E.D.Mo.1983).[3]

■ Since the concept of "new value" is applicable to this proceeding, the Court must examine more closely the specific elements of the defenses asserted under sections 547(c)(1), (4). Paragraph (c)(1) requires that the transfer was intended by both parties to be contemporaneous for new value and was in fact substantially contemporaneous. In this instance, the transfer was one month late, rather than contemporaneously. Moreover, there is no evidence that the transfer was intended to be contemporaneous by either party. Under these circumstances, section 547(c)(1) will not preclude recovery of the transfer. *In re Everlock,* 171 B.R. 251 (Bankr.E.D.Mich.1994) (payment need be made in month due in order to be substantially contemporaneous); *In re Coco,* 67 B.R. 365 (Bankr.S.D.N.Y.1986); *see Drabkin v. District of Columbia (In re Auto–Train Corp.),* 55 B.R. 69 (Bankr.D.D.C.1985).

■ Section 547(c)(4) is also a "new value" exception, enacted to address the problem of a business relationship in which credit is continually extended on an open account. *See generally* 4 *Collier on Bankruptcy,* § 547.12 (15th Ed.1994).[4] Section 547(c)(4) requires that the creditor give new value that is not secured by an unavoidable security interest and that the debt remain unpaid. As discussed above, Graham gave new value. Moreover, it is undisputed that the debt remained unpaid.

2. New value is defined in the Bankruptcy Code:

"New value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation;

11 U.S.C. § 547(a)(2).

3. The majority of the cases holding the opposite conclusion are distinguishable on several grounds. Several of the cases indicate that the debtor was not actually using the property, *see, e.g., Sunbeam–Oster Co., Inc. v. Lincoln Liberty Ave., Inc. (In re Allegheny),* 145 B.R. 823 (W.D.Pa.1992); *In re Upstairs Gallery,* 167 B.R. 915 (9th Cir. BAP 1994), or occur in a jurisdiction where the debt is considered to arise when the lease is executed, *see, e.g., Upstairs Gallery.*

4. A situation not unlike a leasehold.

The debtor asserts that the exception is unavailable to Graham because Graham was secured by a security deposit in the amount of $11,846.00. The lease expressly provides for Graham to hold a "security interest" in the form of cash to secure payment of rents. Under the Bankruptcy Code, a security interest is "a lien created by an agreement." 11 U.S.C. § 101(51). Accordingly, Graham holds a security interest within the meaning of section 547(c)(4).

Graham asserts that the debtor can only recover the preference to the extent that it is secured. The Court finds this argument to be persuasive. The exception provides that the new value may not be "secured by an otherwise unavoidable security interest." 11 U.S.C. § 547(c)(4)(A). The secured interest is only the amount held by the lessor, in this instance, $11,846. The new value is secured to that extent. To the extent that the new value is unsecured, it has replenished the estate and thus should be excepted from recovery as a preference. *See Baranow v. Gibraltar Factors Corp. (In re Hygrade Envelope Corp.)*, 393 F.2d 60 (2d Cir.), *cert. denied*, 393 U.S. 837, 89 S.Ct. 114, 21 L.Ed.2d 108 (1968); 3 *Norton Bankruptcy Law and Practice 2d*, § 57:20 at 57–90 (1994).

Since the section protects the creditor only to the extent of the unsecured portion, the debtor may recover $11,846 of the $16,900. Graham currently holds $11,846 (security deposit) and $16,900 (February rent payment). The debtor seeks to recover the $16,900 payment. Since there is a security interest in the amount of $11,846, the new value exception is limited to recovery of that security. Accordingly, the debtor recovers $11,846 and Graham retains its $11,846 security deposit, plus the unsecured portion, $5,054.

Although Graham in fact extended new value to the debtor, the exceptions to recovery of the preference payment are unavailable to to the extent it is secured. Accordingly, it is

**ORDERED** that judgment will be entered in favor of plaintiff in the sum of $11,846, plus interest according to law.

**IT IS SO ORDERED.**

## *ORDER GRANTING MOTION TO ALTER OR AMEND JUDGMENT*

This Cause came before the Court upon the defendant's Motion to Alter or Amend Judgment or in the Alternative, for New Trial, filed on March 21, 1995, to which the plaintiff responded. The plaintiff sought recovery of $16,900.67 in past-due rental payments made during the ninety days prior to the filing of the petition in bankruptcy. The defendant asserted that the new value exception prohibits the debtor from recovering the transfer. 11 U.S.C. § 547(c)(4).

Following the comments in *Charisma Investment Co. v. Airport Systems, Inc. (In re Jet Florida System)*, 841 F.2d 1082 (11th Cir.1988) and the holdings in *In re Everlock*, 171 B.R. 251 (Bankr.E.D.Mich.1994); *In re American International Airways*, 68 B.R. 326 (Bankr.E.D.Pa.1986); *In re Quality Plastics*, 41 B.R. 241 (Bankr.W.D.Mich.1984); *In re Garland*, 28 B.R. 87 (Bankr.E.D.Mo. 1983), the Court determined that the debtor received the use of the property, which use constituted new value to the extent the debtor remained in the property for the next month(s). While the use of the property was determined new value, this Court's opinion held that to the extent the lessor held a security interest, the new value exception did not apply. 11 U.S.C. § 547(c)(4)(A).

The Motion to Alter or Amend asserts the argument that since the debtor continued to occupy and use the premises for the months of March and April 1992, that use, too, must be taken into consideration in the new value analysis. The movant directs the Court's attention to the parties' stipulations of fact which when reexamined support Graham's argument for reconsideration. This important fact was not argued in the parties subsequent pretrial submissions and indeed was also overlooked by the Court.

Upon reconsideration, this Court accepts this argument, but not the movant's calculations, which do not take into account the new value the Court has already determined was given for the month of February. In addition to the new value given for the month of February ($5,054—the value reduced by the

amount of the security interest),[1] the defendant gave new value for the month of March ($16,900.67) and twenty-one days in April ($11,830.35). However, only $16,900.67 was paid for the value received. Accordingly, Graham gave unsecured new value greatly in excess of the rent paid. Since this was unsecured new value, under this Court's previous ruling, it should be excepted from recovery pursuant to 11 U.S.C. § 547(c)(4).

Accordingly, it is

**ORDERED** that the defendant's Motion to Alter or Amend Judgment or in the Alternative, for New Trial, filed on March 21, 1995, is GRANTED. Judgment will be entered in favor of the defendant.

**IT IS SO ORDERED.**

---

**1.** While the motion states that the security interest is $11,885.02, the evidence before the Court is that the security interest was $11,846.